UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEN GUTIERREZ, CHRISTINE ALESKI,
MYRON SNYDER, individually and
GUTIERREZ-McMULLEN, INC., a
Michigan corporation,

                    Plaintiffs,                              CIVIL NO. 05-72567
                                                   HON. LAWRENCE P. ZATKOFF

BEN KENNEDY, JOYCE KENNEDY, and
BRIAN KENNEDY, individually and
KENNEDY MACHINE TOOL, INC.,
an Indiana corporation, jointly and severally

                    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 3, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

Plaintiffs brought this diversity action against Defendants on June 28, 2005.  Plaintiffs brought five claims against Defendants: payment for goods sold and delivered, repayment of money lent, payment for professional services, fraud, and appointment of a receiver.  Defendants brought three counterclaims against Plaintiff Gutierrez: breach of stock sale agreement, breach of oral contract, and breach of fiduciary duty.  Prior to trial, the parties settled Plaintiffs' claims for payment for goods sold and delivered, repayment of money lent, and payment for professional services.  The case proceeded to a bench trial on August 30, 2006.  At the start of trial, Plaintiffs dismissed their

claims of fraud and for appointment of a receiver.  Thus, the only issues before the Court were Defendants' counterclaims against Plaintiff Gutierrez for breach of stock sale agreement, breach of oral contract, and breach of fiduciary duties.  For the reasons that follow, judgment will be entered for Plaintiff Gutierrez on Defendants' counterclaims.

## II.  BACKGROUND

Defendants Ben Kennedy and Joyce Kennedy founded Kennedy Machine Tool ("KMT") in 1982.  In 2000 Ben and Joyce's son, Brian, became president of KMT.  KMT is engaged in the special machining business, and manufactures tooling for production lines.  In 2003 KMT was having financial difficulties, and in the fall of 2003 the Kennedys met Plaintiff Ben Gutierrez.

Guiterrez took over McMullen Tool Supply, now known as Gutierrez Industries, in 2002. Gutierrez Industries provides businesses with a variety of services and products, including specialty tooling.  Gutierrez met the Kennedys through David Mueller, who told Gutierrez that KMT was in financial difficulty.  Gutierrez thought he could use his business expertise and contacts to assist KMT with its financial difficulty.  Gutierrez also thought he might be able to obtain minority company status for KMT, which would enable it to attract new business.

Gutierrez initially helped KMT by loaning it the money it needed to continue operating. After Gutierrez made the loans, he discussed becoming a shareholder of KMT with the Kennedys, who at that time owned all of its stock.  Gutierrez and the Kennedys also discussed restructuring the financing of KMT, and acquiring minority company status for KMT.  Gutierrez asked his accountant, Myron Snyder, to analyze KMT's situation, and to make suggestions.  One suggestion

2

made by Snyder was that the Kennedys contact Hennessey Capital, a factoring company.[1]  Pursuant

to Snyder's suggestion, Brian Kennedy sent an application for financing to Hennessey Capital on

March 8, 2004.

On March 11, 2004, Brian Kennedy prepared a stock sale agreement ("the Agreement").

Prior to the preparation of the Agreement, Gutierrez requested that it not contain any language about

minority company status.  The Agreement reads as follows:

> Bennie and Joyce Kennedy agree that this is an official and legal document and will
> serve as official document to relinquish Sixty Percent (60%) of their present stock
> to Ben Gutierrez Jr.

> 1.   Mr. Gutierrez helps acquire financing to restructure business capital debt and
>      current credit line.

> 2.   Following the secured financing Ben Gutierrez, Ben and Joyce Kennedy
>      would be allowed to recover personal cash invested in the business.  The
>      amount is as follows Ben Gutierrez $144,000.00 approx. and $250,000
>      approx. for Ben and Joyce Kennedy to be paid at an appropriate time.  The
>      value may change for each party until a finance restructuring occurs.

> 3.   The employment of the [sic] Ben and Brian Kennedy will be maintained and
>      review [sic] annually.

> 4.   Their wages and benefits will be determined and will including [sic] post
>      employment life insurance, health care insurance expenses for Ben and Joyce
>      Kennedy.

> 5.   Kennedy Machine and Tool will agree to rent the Alexandria Facility and
>      Anderson Facility from Ben and Joyce Kennedy, B & J Holdings for the
>      properties presently being used by Kennedy Machine and Tool Inc.  At said
>      time Kennedy Machine will have the option to purchase both properties.

> 6.   Buy and Sale agreement in the situation of death of Stockholders.

> 7.   Stockholders to meet on a quarterly basis.

---

[1]A factoring company buys accounts receivables from another company at a discounted
price.

3

Ben Kennedy and Ben Gutierrez signed the Agreement. Joyce Kennedy was in Florida, and did not sign the Agreement. When she returned, she expressed dissatisfaction with the Agreement, but agreed to transfer the shares to Gutierrez.

The parties have different interpretations of the events that transpired after the transfer of the shares. Gutierrez claims that he did all he could to assist the Kennedys and KMT, but they were unwilling to cooperate with him. The Kennedys claim that Gutierrez did not provide the assistance that he promised. The instant suit was filed on June 28, 2005.

### III. FINDINGS OF FACT AND LAW

As noted above, the only issues before the Court are the Kennedys' counterclaims against Gutierrez for breach of the Agreement, breach of oral contract, and breach of fiduciary duties.

**A.     Breach of the Agreement**

The Kennedys argue that Gutierrez committed two breaches of the Agreement: he did not restructure KMT's capital debt or credit line, and he instituted the instant suit for repayment of a loan to KMT. For their first argument, the Kennedys rely on the provision of the Agreement that states "Mr. Gutierrez helps acquire financing to restructure business capital debt and current credit line."

The parties do not agree on the precise meaning of this provision. Ben and Brian Kennedy testified that they expected Gutierrez to obtain a credit line at a bank for KMT. Brian Kennedy also testified that the intention was for Gutierrez to help free up cash flow for KMT. Gutierrez testified that he agreed to help with creditors, and does not know what the "current credit line" provision of the Agreement refers to.

Michigan law allows for the introduction of extrinsic evidence to demonstrate the existence

4

of an ambiguous provision, and to clarify the meaning of the provision. *Goodwin, Inc. v Orson E. Coe Pontiac, Inc.*, 392 Mich 195, 209 (1974). However, the Court finds that the Kennedys have failed to prove that the intention of the provision was that Gutierrez arrange for KMT to receive a credit line at a bank. The provision states that Gutierrez's obligation was to help "acquire financing." The financing would be used "to restructure business capital debt and current credit line." The plain language of the provision cannot be interpreted as requiring Gutierrez to obtain a credit line at a bank for KMT. Rather, the provision requires Gutierrez to use good faith efforts to obtain financing for KMT. This interpretation is consistent with part of Brian Kennedy's testimony, where he stated that the Kennedys wanted Gutierrez to help with KMT's cash flow situation.

Gutierrez argues that Snyder's actions on Gutierrez's behalf satisfy his obligation to help acquire financing. Gutierrez notes Snyder suggested that the Kennedys contact Hennessey Capital. The subsequent factoring arrangement freed up cash for KMT, and allowed it to pay off a line of credit with National City Bank. Paying off National City was of paramount importance, because the bank had put KMT in a workout program.[2]

In response, the Kennedys note that Brian Kennedy's undisputed testimony was that he had applied for a factoring arrangement with Hennessey Capital before the Agreement was signed. Thus, Snyder's suggestion cannot be considered an effort to secure financing that satisfied the Agreement. The Court agrees with the Kennedys, and holds that the arrangement with Hennessey Capital did not satisfy Gutierrez's obligations under the Agreement.

However, Snyder also testified that he worked with the majority of KMT's creditors to

---

[2]A workout program is a specialized debt repayment program used by a creditor to avoid pushing a debtor into bankruptcy.

5

change KMT's terms of payment in order to improve cash flow.  The Court found Snyder to be a highly credible witness.  Snyder testified with a professional demeanor, and his answers to questions were straightforward, concise, and non-evasive.  The Court finds that Snyder's attempts to improve KMT's payment terms with its creditors, undertaken on behalf of Gutierrez, met Gutierrez's obligation to use good faith efforts to secure financing for KMT.

In addition, both Snyder and Gutierrez testified that Gutierrez's company provided KMT with approximately $275,000 worth of tools on credit.  The vast majority of these tools were provided to KMT after the Agreement was signed.  Snyder testified that the provision of the tools on credit improved KMT's cash flow.  The extension of credit allowed money to be used for the payment of secured creditors, rather than the purchase of tools.  As above, the Court found Snyder to be highly credible on this point.  The Court finds that the provision of tools on credit satisfied Gutierrez's obligation under the agreement to help acquire financing for KMT.  Thus, Gutierrez did not breach this provision of the Agreement.

The Kennedys also argue that Gutierrez breached the provision of the Agreement dealing with the recovery of personal cash.  This provision states that: "Following the secured financing Ben Gutierrez, Ben and Joyce Kennedy would be allowed to recover personal cash invested in the business.  The amount is as follows Ben Gutierrez $144,000.00 approx. . . ."  The Kennedys note that one of the claims in the instant suit was for a $144,000 loan.  The Kennedys argue that Gutierrez never obtained secured financing for KMT, and thus the filing of the instant suit constituted a breach of the Agreement by Gutierrez.

However, Gutierrez notes that his co-plaintiff in the instant suit is Christine Aleski.  Brian Kennedy testified that Aleski made a loan to KMT, but was not a party to the Agreement.  Gutierrez

argues that because Aleski was not bound by the Agreement, it was not a breach on Gutierrez's part for Aleski to bring suit to collect the loan. The Court agrees that the Kennedys have not proven that Gutierrez breached this portion of the Agreement. Therefore, the Court rules in favor of Gutierrez on this claim.

**B.      Breach of Oral Contract**

The Kennedys argue that Gutierrez breached an oral agreement to obtain minority company status for KMT. However, the testimony at trial did not establish that such an agreement existed. The testimony of Brian and Ben Kennedy, and Gutierrez, was that prior to the Agreement, the parties had discussed the possibility of Gutierrez obtaining minority company status for KMT. However, at Gutierrez's request a provision containing minority company status was removed from the Agreement. Any discussion regarding minority company status should be construed as part of the negotiations leading to the signing of the Agreement, not as a separate, legally binding contract. Thus, the Court finds that Gutierrez did not breach an oral agreement with the Kennedys to obtain minority company status for KMT. The Court rules in favor of Gutierrez on this claim.

**C.      Breach of Fiduciary Duties**

The Kennedys argue that Gutierrez, as a shareholder, never took any action to further the interests of KMT, or bring it new business. In contrast, Gutierrez and Synder testified that they repeatedly made suggestions to the Kennedys to improve KMT's business practices, but the suggestions were ignored.

However, the Court need not decide the extent to which Gutierrez furthered KMT's business interests, because it is not necessary to the resolution of the claim. The essence of the Kennedys' claim is that Gutierrez breached his fiduciary duties by bringing the instant suit.

The Court agrees with the Kennedys' statement that majority shareholders owe a strict duty of good faith to the corporation. *Salvadore v. Connor*, 276 N.W.2d 458 (Mich. Ct. App. 1978). However, the Kennedys have supplied no legal authority to support their assertion that Gutierrez breached his fiduciary duties based on the facts of this case. Gutierrez brought suit with his corporation and Aleski to recover money owed to them by KMT. The Kennedys have failed to prove that these actions constitute a breach of Gutierrez's fiduciary duties. Therefore, the Court rules in favor of Gutierrez on this claim.

## IV. CONCLUSION

For the above reasons, the Court rules in favor of Plaintiff Gutierrez on Defendants' counterclaims. Defendants' counterclaims are HEREBY DISMISSED with prejudice.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: October 3, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 3, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

8